UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
ELIZABETH HAMMELL, *on behalf of herself and as executrix and trustee of the Estates of Herbert and Marcia Hebel, as well as on behalf of the Pilot Products, Inc. Defined Benefit Pension Plan*

                     Plaintiff,

              - against -

PILOT PRODUCTS, INC. DEFINED BENEFIT PENSION PLAN; PILOT PRODUCTS, INC.; and CAROLYN HEBEL,

                     Defendants.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-0803 (BMC)

**COGAN**, District Judge.

In the wake of the Court's judgment in her favor, plaintiff Elizabeth Hammell has moved for attorneys' fees, costs, sanctions, and pre- and post-judgment interest. Her motion is granted in part. She is entitled to the requested costs and post-judgment interest, she is entitled to attorneys' fees and pre-judgment interest at reduced rates, and her request for sanctions is mooted by the award of attorneys' fees.

## DISCUSSION

**Attorneys' Fees.** ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[I]n light of the ERISA fee provision's statutory purpose of vindicating retirement rights, granting a prevailing plaintiff's request for fees is appropriate absent some particular justification for not doing so." Donachie v. Liberty Life Assur. Co. of Bos., 745 F.3d 41, 47 (2d Cir. 2014). It is

undisputed that plaintiff prevailed in this action to the tune of $1,780,321.23, and although defendants have provided me with various reasons why I should not award her fees, none are compelling.

Defendants primarily argue that a fee award would constitute a windfall to plaintiff or would, at the very least, create the appearance of a windfall. Reiterating that Marcia had already received all the benefits to which she was entitled under the Pilot Plan, defendants contend that the judgment itself was a windfall, and a fee award would be a "second windfall." This argument merely rehashes issues already resolved at trial. As the Court explained in its oral ruling, the judgment was not a windfall to plaintiff because Marcia would have elected the lump sum payout had Carolyn not breached her fiduciary duty. It is of no moment that defendants paid out the reduced amount Marcia was in fact owed due to Carolyn's breaches.

I am similarly unmoved by defendants' argument that I should reject plaintiff's application for attorneys' fees because she only prevailed on one of the four claims she asserted. Of course, a plaintiff's degree of success should factor into the decision to grant a fee award. See Hensley v. Eckerhart, 461 U.S. 424, 440 (1983). But plaintiff here was overwhelmingly successful; she recovered over 92% of the damages she sought. And a court may award attorneys' fees for unsuccessful claims that are "inextricably intertwined," or share "a common core of facts" with successful theories. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996). Although only one of plaintiff's claims prevailed, all four were based on Carolyn's conduct as the Plan administrator, and the conversion claim was explicitly pled as an alternative theory of relief.

Having determined that plaintiff is entitled to fees, I now evaluate whether the fees requested are reasonable. This is a two-step inquiry. I must first calculate the lodestar – "the

product of a reasonable hourly rate and the reasonable number of hours required by the case" – and then adjust it based on case-specific considerations. Millea v. Metro-N. R.R., 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff's counsel has produced voluminous billing records detailing the hours worked on this matter, and defendants do not seriously accuse them of overbilling. Nor would such an accusation prevail. This was a vigorously litigated case spanning over three years. Both parties added and dropped claims and counterclaims, discovery spawned multiple disputes, and counsel had to prepare for and conduct a three-day bench trial. I can easily conclude that plaintiffs proposed hours worked are a "reasonable number of hours required by the case."

The rates charged, on the other hand, require a closer look. To determine a reasonable hourly rate, the Second Circuit applies the so-called "forum rule," under which a court looks to the "prevailing hourly rate" in "the district where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 187 (2d Cir. 2008). In the Eastern District, the prevailing hourly rate for ERISA cases ranges from $200 to $450 per hour for partners, from $100 to $300 per hour for associates, and from $70 to $100 per hour for paralegals. See Kindle v. Dejana, 308 F. Supp. 3d 698, 712 (E.D.N.Y. 2018). A court may award fees at a higher rate when a party retains out-of-district counsel, but only in "an unusual case." Arbor Hill, 622 F.3d at 191. The prevailing party must make a "particularized showing" that "the use of in-district counsel would [have] produce[d] a substantially inferior result." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009).

Here, plaintiff proposes rates that approximately double the upper bound of the Eastern District rate. She offers two explanations for this divergence, but neither are sufficient. First, she relies on language from a report and recommendation stating that ERISA is a "niche and

3

highly specialized field" justifying "the assistance of specialized attorneys." Maddaloni v. Pension Tr. Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus., No. 19-cv-3146, 2023 WL 7000885, at *6 (E.D.N.Y. Sept. 1, 2023).  Omitted from her brief is the district court's modification of that recommendation upon recognizing that "[c]ourts in this Circuit routinely find such arguments insufficient to rebut the presumption in favor of the forum rule."  Maddaloni v. Pension Tr. Fund of the Pension, Hospitalization & Benefit Plan of Elec. Indus., No. 19-cv-3146, 2023 WL 6457756 at *1-2 (E.D.N.Y. Oct. 4, 2023).  I agree with Judge Kovner and the legion of other opinions holding the same.  ERISA cases do not inherently justify out-of-district representation.

Second, plaintiff points out that she in fact paid these rates throughout the litigation, which in her view "supplies a form of market confirmation as to [the rates'] reasonableness." Themis Cap. v. Democratic Republic of Congo, No. 09-cv-1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014).  This fact alone, however, cannot satisfy her burden. If it did, the Simmons rule would be wholly eroded – any party who retains out-of-district counsel at a more expensive out-of-district rate would be entitled to the fees they pay.[1]  Plaintiff must provide some case-specific reason indicating that in-district counsel would have produced a "substantially inferior result."  See Simmons, 575 F.3d at 174.  Indeed, the court in Themis was not determining whether a plaintiff had justified using out-of-district counsel. See 2014 WL 4379100, at *7.  Rather, it was determining the reasonable rate for complex commercial litigation in S.D.N.Y.  Id.

---

[1] As plaintiff recognizes in her brief, I have expressed misgivings about the harsh Simmons rule, which requires "litigants to justify their attorney selection by proving that a reasonable client would have selected a Southern District attorney because it would 'likely produce a substantially better net result.'"  Gutman v. Klein, No. 03 CIV. 1570, 2009 WL 3296072, at *2 n.1 (E.D.N.Y. Oct. 13, 2009), aff'd, 515 F. App'x 8 (2d Cir. 2013).  I maintain that the rule "ignores the geographic reality and its economic consequences in New York City." Id.  Yet, just as I was bound by Simmons in 2009, I am bound by it today.

4

All that said, there is enough on the record for me to conclude that this was no run-of-the-mill ERISA case. It involved thorny questions of ERISA law, required extensive discovery and extra-judicial factfinding, and was litigated by two international mega-firms. I therefore find that the proposed rates are reasonable when reduced by 15%. See Graziano v. First Unum Life Ins. Co., No. 21-cv-2708, 2024 WL 1175143 (S.D.N.Y. Mar. 19, 2024). The modified rates – ranging from $935 per hour for Dana Berkowitz's work at King & Spalding to $170 per hour for the Litigation Fellows at Stris & Maher – are much closer to rates approved in recently decided, comparably complex cases in the Eastern District. See, e.g., Zhongli Sci. & Tech. Grp. Co. v. Fir Tree Partners, No. 22-mc-2795, 2023 WL 7130666, at *4 (E.D.N.Y. Oct. 30, 2023), recommendation adopted, 2024 WL 525535 (E.D.N.Y. Feb. 9, 2024). With the 15% reduction, the lodestar yields $1,065,145.29 in attorneys' fees, and the parties have given me no reason to depart from this sum.

**Costs.** Next, plaintiff seeks to recover various "out-of-pocket expenses incurred by the attorney[s] which are normally charged to fee-paying clients," including travel costs, shipping expenses, and legal research fees. For the most part, these costs are routinely compensable. See Lawson v. Rubin, No. 17-cv-6404, 2018 WL 4861380, at *4 (E.D.N.Y. Oct. 5, 2018). As to the research fees, defendants identify some cases holding that such "expenses are recoverable in an application for attorney's fees" but not as separately taxable costs. Gonzalez v. Bratton, 147 F. Supp. 2d 180, 212 (S.D.N.Y. 2001). Courts are split on this issue, but I find that they are separately taxable costs. Compare Gonzalez 147 F. Supp. 2d at 212 with Lawson, 2018 WL 4861380, at *4. It is worth noting, though, that the clashing approaches yield the same result in this case. Regardless of whether I lump the research expenses in with the attorneys' fees or separately award them as costs, plaintiff would recover them.

**Sanctions.** Plaintiff also moves to sanction defendant for alleged discovery violations during two depositions. She asks that I award her the attorneys' fees and costs incurred in connection with the depositions. Indeed, the Court warned defendants with respect to Elizabeth's second deposition that "[i]f after a review of the deposition transcript the Court is not convinced that the deposition could have revealed anything pertinent to this case that could not have been anticipated before the filing of the amended complaint, defendants will pay plaintiffs attorneys' fees in connection with the deposition." However, I have already awarded these fees and costs to plaintiff – the timesheets and invoices include the costs incurred in and hours billed on both depositions. Thus, plaintiff's request for sanctions is moot.

**Interest.** Finally, plaintiff moves for pre- and post-judgment interest. There is no question that plaintiff is entitled to post-judgment interest under 28 U.S.C. § 1961(a). As for pre-judgment interest, district courts have "broad discretion" over the decision to award any interest and, if so, at what rate. Frommert v. Conkright, 913 F.3d 101, 109 (2d Cir. 2019). "In exercising such discretion, [a court must] consider (i) the need to fully compensate the wronged party for actual damages suffered, (ii) . . . fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." Id. (cleaned up).

With these factors in mind, I conclude that plaintiff is entitled to prejudgment interest, but not at the 9% New York statutory rate she seeks. The New York statutory rate has remained unchanged since 1981, when interest rates were far higher than they are today. See id. A 9% return on investment would be far out of line with what plaintiff reasonably would have earned on the lump sum, and such an award would not serve the remedial purposes of ERISA.

Instead, I join the growing number of courts adopting the federal prime rate in ERISA cases.  See E.V. v. United Healthcare Oxford, No. 22-cv-2855, 2024 WL 3534405, at *6 (S.D.N.Y. July 25, 2024) (collecting cases).  The average federal prime rate from September 30, 2020 – the uncontested earliest ascertainable date of the cause of action – to November 22, 2024, is roughly 5.25%.  Accordingly, plaintiff is entitled to $387,695.43 in prejudgment interest.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in part.  The Clerk is directed to enter an amended judgment in favor of plaintiff and against defendants, jointly and severally in the amount of $1,780,321.23, plus $1,065,145.29 in attorneys' fees, plus $45,030.30 in costs, plus $387,695.43 in prejudgment interest for a total of $3,278,192.25.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       January 9, 2025