UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- X

ELIZABETH HAMMELL, *on behalf of herself and as executrix and trustee of the Estates of Herbert and Marcia Hebel, as well as on behalf of the Pilot Products, Inc. Defined Benefit Pension Plan*

Plaintiff,

\- against -

PILOT PRODUCTS, INC. DEFINED BENEFIT PENSION PLAN; PILOT PRODUCTS, INC.; and CAROLYN HEBEL,

Defendants.

\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\-\- X

**MEMORANDUM DECISION AND ORDER**

21-cv-0803 (BMC)

**COGAN**, District Judge.

Plaintiff Elizabeth Hammell moves under 29 U.S.C. § 1132(g)(1) to recover the attorneys' fees and costs that she incurred while defending this Court's judgment in her favor on appeal. See Hammell v. Pilot Prods., Inc. Defined Benefit Pension Plan, No. 24-3283-cv (Lead), 2026 WL 586699 (2d Cir. Mar. 3, 2026).

She claims that a fee award of $368,978.20, an amount that she has voluntarily reduced by 15% from her actual time charges of $434,092 (consistent with the Court's order awarding fees incurred through trial), is necessary to restore herself to the position that she would have been in but for defendant Carolyn Hebel's fiduciary breach and litigation conduct. Additionally, she claims that she is entitled to recoup $7,233.16 in costs. For the reasons set forth below, the motion is granted in part.

**BACKGROUND**

In 2024, the Court held a bench trial in this Employee Retirement Income Security Act ("ERISA") case and ruled largely in plaintiff's favor. In a decision from the bench, the Court awarded her a $1,780,321.23 judgment on her duty of care claim, which was 92% of the damages she sought for her four total claims. In 2025, the Court granted in part plaintiff's motion for attorneys' fees, costs, sanctions, and pre- and post-judgment interest, and entered an amended judgment that included the fees and costs. Hammell v. Pilot Prods., Inc. Defined Benefit Pension Plan, No. 21-cv-0803, 2025 WL 71705 (E.D.N.Y. Jan. 10, 2025)

Defendants appealed the Court's amended judgment, challenging only the judgment in favor of plaintiff on the duty of care claim and declining to challenge the fee award.[1] Plaintiff subsequently cross-appealed the judgment in favor of defendants on the duty of loyalty claim. The Second Circuit affirmed this Court's decision. Plaintiff now moves to collect attorneys' fees and costs for her expenses incurred during the appeal, including those incurred in connection with pursuing her cross-appeal.

**DISCUSSION**

ERISA provides that the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[I]n light of the ERISA fee provision's statutory purpose of vindicating retirement rights, granting a prevailing plaintiff's request for fees is appropriate absent some particular justification for not doing so." Donachie v. Liberty Life Assur. Co. of Bos., 745 F.3d 41, 47 (2d Cir. 2014) (internal quotation marks and citations omitted). A court may award fees and costs under § 1132(g)(1) if the fee claimant has

---

[1] See Hammell, 2026 WL 586699, at *1 n.2 ("Similarly, if her arguments on appeal are rejected regarding the claim for breach of the fiduciary duty of care, Carolyn does not separately challenge the district court's award to Elizabeth of attorneys' fees and costs, pursuant to 29 U.S.C. § 1132(g)(1).").

achieved "some degree of success on the merits."[2]  Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)).  Courts in this Circuit have awarded appellate fees in ERISA cases in which the plaintiff-appellees were successful at both the district and circuit levels.  See, e.g., Buckley v. Slocum Dickson Med. Grp., PLLC, 111 F. Supp. 3d 218 (N.D.N.Y. 2015); L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc., No. 00-cv-7394, 2013 WL 6388633 (E.D.N.Y. Dec. 5, 2013).

As the Second Circuit had no occasion to address the matter of appellate fees in its decision, this Court will decide that question.  See L.I. Head Start Child Dev. Servs., 2013 WL 6388633, at *2 ("[N]othing in the Appellate Rules of Civil Procedure requires the Second Circuit's judicial imprimatur before a district court may actually award such fees.").  The Court indicated during the trial phase that plaintiff was "overwhelmingly successful" in terms of damages recovered despite failing on three out of four claims.  Hammell, 2025 WL 71705, at *1. Given that the Second Circuit fully affirmed this Court's ruling, plaintiff should, once again, be able to recover fees and costs, having satisfied the standard of attaining "some degree of success" at the proceedings in connection with the appeal.  See Hardt, 560 U.S. at 245 (quoting Ruckelshaus, 463 U.S. 680 at 694).

Defendants argue that plaintiff has already been made whole through the underlying judgment and trial-phase fee award, and so an appellate fee award would constitute an additional windfall.  This argument doesn't make much sense.  It was defendants who chose to appeal.

---

[2] Plaintiff's motion discusses the five-factor test from Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869, 871 (2d Cir. 1987).  Hardt narrowed the precedential value of this decision, stating that "[b]ecause these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section."  560 U.S. at 254-55.

3

That was their right, but if they hadn't exercised it, plaintiff wouldn't have incurred any further fees to defend the underlying judgment in her favor. Doing so reduced her total recovery and thus diminished the extent to which she was made whole.

Defendants also argue that plaintiff should not be compensated for fees incurred in pursuing her cross-appeal. The Court disagrees. Plaintiff brought her cross-appeal as an alternative ground for affirmance in the event that defendants prevailed on their appeal, making plaintiff's cross-appeal one component of an overall successful action – a reasonable step to "preserve and protect the judgment" in her favor – rather than a separate, unsuccessful procedure. Plainly put, the appeal and cross-appeal were inextricably intertwined; plaintiff's cross-appeal would not have even existed but for defendants' appeal. Even though, in the end, plaintiff did not gain anything by pursuing the cross-appeal, it was a reasonable step to take in the pursuit of affirming the judgment attained at trial.

The parties' present dispute over appellate fees echoes the parties' prior dispute over trial-phase fees. After plaintiff's substantial victory on one of her four claims, defendants sought to cabin plaintiff's fees to just that successful claim. The Court rejected this attempt, holding that plaintiff's three unsuccessful claims "share[d] 'a common core of facts'" with her successful claim and awarding plaintiff attorneys' fees for all her claims. See Hammell, 2025 WL 71705, at *1 (quoting Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir. 1996)). The Court sees no reason to depart from this logic in determining the compensability of fees accrued in connection to plaintiff's cross-appeal. Her cross-appeal and defendants' appeal "involved the same core set of facts ... and the same ERISA fiduciary-duty legal framework," and were, fundamentally, two parts of the same (successful) whole.

4

The next task is determining the amount of fees to which plaintiff is entitled.  To determine the reasonableness of the attorneys' fees sought in an action based on a federal question, courts in this Circuit use the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  The presumptively reasonable fee, also known as the lodestar, is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," which the Court will adjust based on case-specific considerations.  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff's counsel has again "produced voluminous billing records detailing the hours worked on this matter."  See Hammell, 2025 WL 71705, at *2.  The Court disagrees with defendants' contention that plaintiff's counsel overbilled.  Plaintiff used a leanly staffed legal team which spent roughly 350 combined hours on briefing, oral argument preparation, and mandatory mediation, all to protect the substantial $1.78 million judgment for an individual plaintiff.

As for the hourly rates, those warrant closer inspection.  Here, plaintiff requests an award of $368,978.20 in fees for the work performed by two partners and two associates from King & Spalding.  This represents a 15% reduction from how much plaintiff's attorneys actually charged plaintiff per hour: lead partner Dana Berkowitz charged $1,405 per hour in 2025 and $1,590 in 2026, but is requesting an hourly rate of $1,194 (15% off the lower 2025 rate); partner Darren Shuler charged $1,725 per hour but is requesting an hourly rate of $1,466; associate Natalie Willis charged $1,000 per hour in 2025 and $1,225 per hour in 2026 but is requesting an hourly rate of $850 (15% off the lower 2025 rate); and associate Marcia Foti charged $975 per hour but is requesting an hourly rate of $829.

5

As the Court previously remarked, these rates greatly exceed the upper bound of the prevailing rates for ERISA cases in this District. See id. That being said, it remains true that "this was no run-of-the-mill ERISA" case because, among other things, "[i]t involved thorny questions of ERISA law ... and was litigated by two international mega-firms." Id. The Court thus found that the proposed rates were reasonable when reduced by 15%. Id. To align with the Court's prior decision, plaintiff has voluntarily reduced her claimed appellate attorneys' fees by 15%.

But during the trial-phase, plaintiff did not rely only on the work of King & Spalding. Rather, she used two partners, three associates, a paralegal, and three litigation fellows from Stris & Maher, plus lead partner Dana Berkowitz before she took the client to King & Spalding. Of note, Stris & Maher billed at substantially lower rates than King & Spalding, and even their rates got reduced by 15%.

Additionally, King & Spalding charged higher rates for their work on the appeal than for their work during the trial phase. During the trial phase, lead partner Dana Berkowitz, while at King & Spalding, billed at an hourly rate of $1,100 and associate Natalie Willis billed at an hourly rate of $810. These rates, which are already lower than the reduced rates that plaintiff is now seeking for appellate fees, were nonetheless reduced by 15%.

It was certainly reasonable for plaintiff to have kept her counsel from King & Spalding for the appeal, given their familiarity with the underlying record and the complicated legal issues as well as their longstanding relationship with plaintiff. Defendants ought to understand this – they likewise kept their trial counsel for the appeal. Notwithstanding, plaintiff's counsel's hourly rates strike the Court as too high even with the 15% reduction. And as indicated above, when the Court previously applied a 15% reduction, all of the rates, both as billed and as

6

reduced, were lower than the reduced rates that plaintiff presently seeks.  Accordingly, the Court finds that the proposed rates of plaintiff's four timekeepers are reasonable when reduced by 25% from their original rates.  With the 25% reduction, the lodestar yields $325,569 in attorneys' fees.

Lastly, plaintiff seeks to recover $7,233.16 in costs.  Costs incurred by counsel and normally charged to fee-paying clients are routinely compensable.  See Lawson v. Rubin, No. 17-cv-6404, 2018 WL 4861380, at *4 (E.D.N.Y. Oct. 5, 2018).  Plaintiff's costs request, catalogued in the invoices that plaintiff has provided, is reasonable.  Defendants object that plaintiff should not be able to recover costs attributable to electronic research.  However, the Court already rejected this argument in its prior fee decision, explaining that it views research expenses as separately taxable costs.  Hammell, 2025 WL 71705, at *3.  Besides, as the Court also explained in that prior decision, plaintiff would otherwise recover research expenses as attorneys' fees if not as costs.  Id.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is granted in part.  Plaintiff is awarded appellate attorneys' fees in the amount of $325,569, plus $7,233.16 in costs for a total of $332,802.16.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
      July 15, 2026